UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCHARLENE FLYNN-RODRIGUEZ, | **MEMORANDUM AND ORDER** |
| Plaintiff, | 14-CV-2287 |
| – against – | |
| THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER JOHNNY CHENG, Shield #7824, and POLICE OFFICER "JOHN" CHOW, individually and in their official capacity as New York City Police Officers, (the first name "John" being fictitious, as the true first name is presently unknown), | |
| Defendants. | |

**Parties**

Scharlene Flynn-Rodriguez

The City of New York
New York City Police Department
Police Officer Johnny Cheng, Shield
#7824
Police Officer "John" Chow

**Appearances**

Ellie Amanda Silverman
Novo Law Firm, PC
299 Broadway
17th Floor
New York, NY 10007
Tel: 212-233-6686
Fax: 212-233-6687
ellies@novolawfirm.com

Ashley Rebecca Garman
Jennifer Lilly Koduru
New York City Law Department
Office of Corporation Counsel
100 Church Street
New York, NY 10007
Tel: 212-356-3539
Fax: 212-788-9776
agarman@law.nyc.gov
jkoduru@law.nyc.gov

**JACK B. WEINSTEIN, Senior United States District Judge:**

## Table of Contents

I.    Introduction ........................................................................................................ 3

II.    Facts .................................................................................................................. 3

    A.  Individuals...................................................................................................... 3

    B.  Events Leading To Arrest ............................................................................... 4

    C.  Arrest............................................................................................................. 5

    D.  Criminal Charges ........................................................................................... 7

    E.  Lawsuit and Motion ....................................................................................... 8

III.    Law .................................................................................................................. 10

    A.  Summary Judgment ...................................................................................... 10

    B.  False Arrest .................................................................................................. 10

    C.  Malicious Prosecution .................................................................................. 12

        1.    Initiation of a Criminal Proceeding ........................................................ 12

        2.    Probable Cause ...................................................................................... 13

        3.    Actual Malice ........................................................................................ 13

        4.    Termination in Plaintiff's Favor ............................................................. 14

        5.    Deprivation of Liberty ........................................................................... 14

    D.  42 U.S.C. § 1983 and Municipal Liability.................................................... 15

    E.  Intentional Infliction of Emotional Distress ................................................. 16

    F.  Substantive Due Process .............................................................................. 17

IV.    Application of Law to Facts.............................................................................. 18

    A.  Claims Against New York City Police Department ....................................... 18

    B.  False Arrest .................................................................................................. 18

    C.  Malicious Prosecution for Resisting Arrest .................................................. 18

    D.  Excessive Force ........................................................................................... 19

    E.  Intentional Infliction of Emotional Distress ................................................. 21

    F.  Substantive Due Process .............................................................................. 22

V.    Conclusion ....................................................................................................... 23

# I. Introduction

This case involves a mélange of allegations of false arrest, excessive use of force, denial of medical and sanitary lock-up conditions, and malicious prosecution against two New York City Police Department ("NYPD") officers and the City of New York. Defendants have moved for partial summary judgment. Their motion is granted in part.

# II. Facts

Plaintiff did not submit any opposition to defendants' statement of undisputed fact as required under Local Civil Rule 56.1. Each statement of fact in defendants' submission is deemed admitted for purposes of the motion. Local Civ. R. 56.1(c).

## A. Individuals

Plaintiff was a forty-four year old resident of Brooklyn. Defs.' Local Civ. R. 56.1 Statement of Undisputed Material Facts, Feb. 25, 2016, ECF No. 37 ("56.1 Statement"), at ¶ 1. Defendants Johnny Cheng and Anthony Chow were NYPD officers assigned to the 62nd Precinct with non-party Officer Nastassia Heurtelou. *Id.* at ¶¶ 2-3. Non-party Paul Adams was the Desk Sergeant for the 62nd Precinct house. Decl. of Sergeant Paul Adams in Supp. of Defs.' Mot. for Partial Summ. J., Feb. 9, 2016, ECF No. 36 ("Adams Decl."), at ¶¶ 1-3.

Rose Flynn, plaintiff's sister-in-law, is married to Thomas Flynn. 56.1 Statement at ¶ 7. According to information provided to the NYPD on April 9, 2013, Rose, Thomas, and their minor-aged children resided in Sinking Spring, Pennsylvania. *Id.* at ¶ 8; Decl. of Ashley R. Garman in Supp. of Defs.' Mot. for Partial Summ. J., Feb. 25, 2016, ECF No. 35 ("Garman Decl."), at Ex. L (Apr. 9, 2013 Domestic Incident Report ("Apr. 9 DIR")).

**B. Events Leading To Arrest**

On February 28, 2013, Rose Flynn obtained a Protection From Abuse Order, No. 13-1479#1 ("PA Order of Protection") from a court in Berks County, Pennsylvania. It prohibited plaintiff from having any contact with Rose Flynn and her children, from February 28, 2013 until February 28, 2016. Garman Decl. at Ex. G (PA Order of Protection).

Plaintiff claims that the PA Order of Protection was falsified by Rose Flynn and that she was never served with it. Pl.'s Mem. in Opp'n to Defs.' Mot. for Partial Summ. J., May 26, 2016, ECF No. 45 ("Pl.'s Opp'n Mem."), at 2. She contends that prior to her arrest on April 9, 2013, she had made multiple complaints to the 62nd precinct about Rose and Thomas Flynn as a result of threats, phone calls, stalking, and abuse. *Id.* at 1. She asserts that as a result of a violent attack on her orchestrated by the Flynns during the summer of 2012, a protection order was issued against them in New York. *Id.*

On March 6, 2013, Rose Flynn filed a complaint against plaintiff at the NYPD 62nd Precinct. Garman Decl. at Ex. H (Mar. 6, 2013 Domestic Incident Report ("Mar. 6 DIR")), Ex. I (Criminal Complaint). Rose Flynn charged that plaintiff had been following and threatening her by sending text messages such as a promise to "gut [her] like a fish." *Id.* at Ex. H (Mar. 6 DIR). She reported that plaintiff had sent her such messages while she (Rose) was actually inside the precinct house. One of these messages was "I see you went inside the 62. LOL have fun Rose when your [*sic*] done come meet me around the corner I'll have my son David and Lucy stab you and the fat jelly pussys." *Id.* at Ex. H (Mar. 6 DIR), Ex. I (Criminal Complaint). David and Lucy are plaintiff's son and sister. 56.1 Statement at ¶¶ 15-16.

### C. Arrest

In the afternoon of April 9, 2013, Sergeant Adams received a call from Detective Christopher Stouch of the Pennsylvania Lower Heidelberg Township Police Department in Sinking Spring. *Id.* at ¶ 17. Detective Stouch informed Sergeant Adams that Rose Flynn had reported that she had received text messages from plaintiff containing threats against her (Rose's) children and their schools. *Id.* at ¶ 18. Detective Stouch gave Sergeant Adams plaintiff's address and requested that plaintiff be brought to the 62nd precinct house so that Lower Heidelberg Township Police could pick plaintiff up there. *Id.* at ¶¶ 19-20.

Sergeant Adams gave Officer Cheng plaintiff's address and directed him to bring plaintiff to the precinct house. *Id.* at ¶ 21. Officers Cheng, Chow, and Heurtelou went to plaintiff's residence. *Id.* at ¶ 23.

The officers knocked on the door of plaintiff's apartment; it was answered by a man who stated that plaintiff lived at the location but was not home. *Id.* at ¶ 24. The officers then left the building and waited on the sidewalk. *Id.* at ¶ 25.

The parties disagree about what happened next. According to defendants, the officers were approached by plaintiff, who identified herself. *Id.* at ¶¶ 25-26. Plaintiff was then handcuffed and taken to the 62nd Precinct house. *Id.* at ¶ 27. Officer Cheng's deposition says that the officers attempted to arrest plaintiff before transporting her to the precinct. Pl.'s Opp'n Mem. at Ex. E (May 18, 2015 Cheng Dep. Tr.), at 39:13-39:22.

Officer Cheng contends that plaintiff resisted arrest, flailed her arms, and made a scene when the officers tried to put her in handcuffs and transport her to the precinct house. *Id.* at 39:13-39-22; Garman Decl. at Ex. I (Criminal Complaint). It is this alleged behavior that underlies the resisting arrest charge.

Plaintiff's version is that upon returning to her residence, officers approached her while she stood outside with her granddaughter. She claims that she was not told that she was being arrested, but only that she needed to accompany the officers to the precinct house. Pl.'s Opp'n Mem. at 2. Plaintiff says that the officers "violently handcuffed" her, "pushed and forced [her] into the patrol car," causing serious injuries. *Id.* at 3. It is undisputed that the officers brought her to the 62nd Precinct house. 56.1 Statement at ¶ 27.

After plaintiff arrived at the precinct house, Officer Cheng spoke to Detective Stouch by phone. *Id.* at ¶ 28. The Lower Heidelberg Township Police Department then faxed documents to the precinct house, including copies of text messages and the PA Order of Protection. *Id.* at ¶¶ 29, 37; Garman Decl. at Ex. K (Text Messages). The text messages included the following statements:

- "Rose Lucy tells me what schools your kids go to lol I will tell david the info and give him the pics you [*sic*] kids will die and all the kids in there [*sic*] school"; and

- "then after david and his friends finish they will mail there [*sic*] body parts around [*sic*] of [child's name] and all the kids same for [child's name] rose [*sic*] time is ticking tick tock."

*Id.* at 2. Officer Cheng vouchered the text message copies as arrest evidence. *Id.* at 1; 56.1 Statement at ¶ 32.

About 6:00 p.m., Officer Cheng spoke with Rose Flynn over the phone. She told Officer Cheng that plaintiff had sent her text messages containing threats against her children's lives and against the lives of all the children at their school. Garman Decl. at Ex. L (Apr. 9 DIR). She also said that she was unable to write a statement on the New York Domestic Incident Report because she was in Pennsylvania. *Id.*; 56.1 Statement at ¶ 35.

Officer Cheng prepared a Domestic Incident Report based on this conversation and the PA Order of Protection. Garman Decl. at Ex. L (Apr. 9 DIR). Plaintiff's arrest was predicated

on the events of March 6 and April 9.  *Id.* at Ex. N (Arrest Report related to Apr. 9, 2013 incident), Ex. M (Arrest Report related to the Mar. 6, 2013 complaint); 56.1 Statement at ¶ 39.

Plaintiff contends that while she was in custody at the precinct house she suffered a "horrific ordeal," including vermin in the precinct lock-up, a delayed trip to the hospital, ignored requests for medication, and continuous harassment and yelling by the officers.  Pl.'s Opp'n Mem. at 3; Hr'g Tr., Aug. 17, 2016.  Before being released on her own recognizance, plaintiff alleges she remained incarcerated at a jail for almost 40 hours.  Pl.'s Opp'n Mem. at 3.

**D. Criminal Charges**

A Misdemeanor Criminal Complaint, signed by Officer Cheng, was filed in Kings County Criminal Court.  It charged plaintiff with the following crimes in connection with Rose Flynn's March 6, 2013 complaint and plaintiff's alleged behavior on April 9, 2013:

- Criminal Contempt in the Second Degree, in violation of N.Y.P.L. § 215.50(3);

- Two counts of Aggravated Harassment in the Second Degree, in violation of N.Y.P.L. §§ 240.30(l)(A)-(B);

- Harassment in the Second Degree, in violation of N.Y.P.L. § 240.26(1); and

- Resisting Arrest.

*See* Garman Decl. at Ex. I (Criminal Complaint), Ex. O (Certificate of Disposition).  The complaint included the threatening text messages.

The portion of the Criminal Complaint setting out the factual basis for the first three charges was based on the March 6, 2013 events as described by Rose Flynn.  *Id.* at Ex. I (Criminal Complaint).  On April 13, 2013, Rose Flynn signed a sworn statement confirming that she had read the Criminal Complaint and that the information attributed to her was true.  *Id.* at Ex. J (Statement of Rose Flynn).

Following her arraignment, two days after her arrest, plaintiff was released on her own recognizance. Between April 11 and July 14, 2014, when the district attorney moved to dismiss all charges against her, she returned to court five times. 56.1 Statement at ¶¶ 47-48; Garman Decl. at Ex. O (Certificate of Disposition). Officer Chow did not interact with anyone from the District Attorney's Office regarding plaintiff's arrest, nor did he testify about the matter. 56.1 Statement at ¶ 50.

### E. Lawsuit and Motion

The city received plaintiff's Notice of Claim on July 8, 2013. Garman Decl at Ex. P (Notice of Claim); 56.1 Statement at ¶ 51. She commenced the instant lawsuit by filing a complaint on April 9, 2014. Defendants answered with general denials. *See* Answer, Oct. 27, 2014, ECF No. 9. In an amended complaint there was added a claim for malicious prosecution. *See* Am. Compl., June 15, 2015, ECF No. 22. Defendants again answered with denials. *See* Answer to First Am. Compl., June 26, 2015, ECF No. 23.

Plaintiff asserted fourteen causes of action against NYPD Officers Johnny Cheng and Anthony Chow, the New York City Police Department, and the City of New York, arising out of her arrest on April 9, 2013: (i)-(iv) Section 1983 of Title 42 of the United States Code; (v) false arrest and imprisonment; (vi) dereliction of duty, depraved indifference and failure to intercede; (vii) battery; (viii) assault; (ix) negligence; (x) substantive due process; (xi) negligent hiring, screening, retention, supervision, and training; (xii) negligent infliction of emotional distress; (xiii) intentional infliction of emotional distress; and (xiv) malicious prosecution.

Defendants moved for partial summary judgment on: (i) Section 1983 claims against the City of New York; (v) false arrest and imprisonment; (ix) negligence; (x) violation of substantive due process; (xi) negligent hiring, screening, retention, supervision and training; (xii) negligent

infliction of emotional distress; (xiii) intentional infliction of emotional distress; (xiv) malicious prosecution; and all claims asserted against the New York City Police Department.

Opposing summary judgment, plaintiff withdrew her claims for: (ix) negligence; (xi) negligent hiring, screening, retention, supervision and training; and (xii) negligent infliction of emotional distress. Pl.'s Opp'n Mem. at 4.

She also "withdraws her claim of False Arrest/False Imprisonment as it relates to the underlying criminal charges." *Id.* It is not clear what this statement means because in the next paragraph plaintiff contends that one of the remaining claims in dispute is "plaintiff's malicious prosecution claim (and by extension [the] claim of false arrest regarding the charge of resisting arrest only)." *Id.*

At the summary judgment hearing, plaintiff agreed that she is asserting only the following claims:

- false arrest for resisting arrest;

- malicious prosecution for the resisting arrest charge against Police Officer Cheng only;

- excessive force against the individual defendants and the City of New York;

- state assault and battery claims against the individual defendants and the City of New York through a *respondeat superior* theory;

- intentional infliction of emotional distress against the individual defendants and the City of New York;

- failure to intervene against the individual defendants with respect to excessive force and battery; and

- substantive due process violations for deliberate indifference to medical needs and incarceration circumstances that shock the conscience.

*See* Hr'g Tr., Aug. 17, 2016.

Defendants do not seek dismissal of plaintiff's excessive force claim against the individual defendants, the state assault and battery claim, or the failure to intervene claim. *See id.*

## III. Law

### A. Summary Judgment

"Summary judgment will be granted when it is shown that there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Bailey v. City of New York,* 79 F. Supp. 3d 424, 439 (E.D.N.Y. 2015) (quoting Fed. R. Civ. P. 56(a)). It is "appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law." *Allstate Ins. Co. v. Sidakis,* No. 13-CV-7211, 2016 WL 556869, at *6 (E.D.N.Y. Feb. 10, 2016).

"The relevant governing law in each case determines which facts are material; '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bank of Am., N.A. v. Fischer*, 927 F. Supp. 2d 15, 25 (E.D.N.Y. 2013) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor." *Id.* (citing *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 86 (2d Cir. 1996)).

### B. False Arrest

A Section "1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted). Plaintiff must show that "(1) the defendant intended to confine the plaintiff,

(2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

"Because probable cause confers authority to confine a suspect, probable cause is a complete defense to a claim of false arrest." *Smith v. Tobon*, 529 F. App'x 36, 38 (2d Cir. 2013) (summary order) (citing *Williams v. Town of Greenburgh*, 535 F.3d 71, 78-79 (2d Cir. 2008)); *see also Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004) (existence of probable cause to arrest for any criminal offense – even an offense other than the one identified by the arresting officer at the time of arrest – defeats a false arrest claim). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Boyd v. City of New York,* 336 F.3d 72, 75-76 (2d Cir. 2003) (quotation omitted). "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard*, 25 F.3d at 102.

"Whether probable cause existed for the charge actually invoked by the arresting officer at the time of the arrest is irrelevant. Accordingly, Defendants prevail if there was probable cause to arrest Plaintiff for any single offense." *Ackerson v. City of White Plains*, 702 F.3d 15, 20 (2d Cir. 2012), *as amended* (Dec. 4, 2012) (quotations omitted). "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

Probable cause requires a focus on the knowledge the officer has at the time of arrest and whether there were "facts sufficient to warrant a prudent person to believe that the suspect had

committed or was committing an offense." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see also Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996) *amended* (May 21, 1996). Because knowledge is presumed to be shared among all law enforcement agencies working on an investigation, probable cause is based on the "collective knowledge of the police, rather than on that of the arresting officer alone." *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 127 (2d Cir. 2009).

### C. Malicious Prosecution

A "claim of malicious prosecution brought under § 1983 is governed by state law." *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). To establish a claim for the tort of malicious prosecution in New York, a plaintiff must show that: (1) the defendant commenced or continued a prosecution against the plaintiff; (2) the defendant lacked probable cause to believe the proceeding could succeed; (3) the defendant acted with malice; (4) the prosecution was terminated in the plaintiff's favor; and (5) there was a sufficient post-arraignment restraint on plaintiff's liberty to implicate his or her Fourth Amendment rights. *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). The law "places a heavy burden on malicious prosecution plaintiffs." *Rothstein v. Carriere,* 373 F.3d 275, 282 (2d Cir. 2004) (quotation omitted).

### 1. Initiation of a Criminal Proceeding

"Under New York law, police officers can 'initiate' [a criminal] prosecution by filing charges or other accusatory instruments," such as a felony or misdemeanor complaint. *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010). "[O]nce a criminal defendant has been formally charged, the chain of causation *between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor*, thereby abolishing the officer's responsibility for the prosecution." *Jouthe v. City of New York,* No. 05-CV-1374, 2009

12

WL 701110, at *11 (E.D.N.Y. June 23, 2009) (quoting *Williams v. City of New York*, No. 02-CV-3693, 2003 WL 22434151, at *6 (S.D.N.Y. Oct. 23, 2003)) (emphasis added). "A police officer may . . . be held liable for malicious prosecution if he provides false information to the prosecutor that influences a decision whether to prosecute." *Id.* (quotation omitted).

### 2. Probable Cause

Whether probable cause existed is determined by a reasonability standard: "probable cause to charge exists where, accounting for any new information learned subsequent to an arrest, 'it was not manifestly unreasonable for [the defendant officer] to charge [the plaintiff].'" *Arrington v. City of New York*, 628 F. App'x 46, 49 (2d Cir. 2015) (summary order) (quoting *Lowth*, 82 F.3d at 572).

Probable cause is a defense to malicious prosecution. "This is so unless the officer, 'following the arrest but prior to initiating prosecution, learned of facts that would negate his earlier determination of probable cause.'" *Jitta v. Polstein*, No. 09-CV-2868, 2011 WL 4073926, at *8 (E.D.N.Y. Sept. 13, 2011) (quoting *Pierre v. City of New York*, 2007 WL 2403573, *11 n. 11 (E.D.N.Y. Aug. 17, 2007)). "The question then is whether . . . information [provided to the officer] is of a type that would have led a reasonable police officer to conclude that no probable cause, sufficient to charge [the plaintiff] with any . . . crimes, existed." *Lowth*, 82 F.3d at 572.

### 3. Actual Malice

An essential element of a claim for malicious prosecution is that the defendant acted with malice, or that the proceedings were initiated with malice. Under New York law, this means "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Id*. at 573 (quoting

*Nardelli v. Stamberg*, 44 N.Y.2d 500, 503, 377 N.E.2d 975, 976 (1978)).  "[A] plaintiff need not

demonstrate the defendant's intent to do him or her personal harm, but need only show a reckless

or grossly negligent disregard for his or her rights."  *Naim v. City of New York*, No. 10-CV-912,

2012 WL 2923308, at *3 (E.D.N.Y. July 18, 2012) (quotation omitted).  "Only where probable

cause to initiate a proceeding is . . . totally lacking may malice reasonably be inferred."  *Wilson

v. McMullen,* No. 07-CV-948, 2010 WL 1268055, at *6 (E.D.N.Y. Mar. 30, 2010) (quotation

omitted).

### 4.  Termination in Plaintiff's Favor

"In the malicious prosecution context, [a] dismissal without prejudice qualifies as a final,

favorable termination if the dismissal represents the formal abandonment of the proceedings by

the public prosecutor, and the circumstances surrounding the termination are not inconsistent

with the innocence of the accused."  *Naim*, 2012 WL 2923308, at *3 (internal quotations and

citations omitted).  Under New York law, dismissal of pending charges against a plaintiff

constitutes a favorable termination as a matter of law.  *Rohrs v. Rohrs,* 17 A.D.3d 659, 660, 793

N.Y.S.2d 532, 534 (2d Dep't 2005).

### 5.  Deprivation of Liberty

"To succeed on a Section 1983 malicious prosecution claim, a plaintiff must establish a

deprivation of liberty in violation of the Fourth Amendment, meaning a deprivation of liberty

'consistent with the concept of seizure.'"  *Evans v. City of New York*, No. 12-CV-5341, 2015 WL

1345374, at *6 (E.D.N.Y. Mar. 25, 2015) (quoting *Singer*, 63 F.3d at 116).

Generally, courts in the Second Circuit

> have found the deprivation of liberty element satisfied particularly
> where a criminal defendant was required to attend several post-
> arraignment court appearances, and/or where, as in New York, a
> defendant's release on his own recognizance requires the defendant

> to "render himself at all times amenable to the orders and
> processes of the court," N.Y. Crim. Proc. Law § 510.40, thereby
> ordinarily requiring that the defendant remain in the state.

*Id.* (citing *Rohman*, 215 F.3d at 215-16); *see also Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) ("a post-arraignment defendant who is obligated to appear in court in connection with [criminal] charges whenever [her] attendance [i]s required suffers a Fourth Amendment deprivation of liberty") (quotation omitted); *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997) (forced travel restrictions sufficient to constitute Fourth Amendment "seizure"); *Sclafani v. Spitzer*, 734 F. Supp. 2d 288, 298 (E.D.N.Y. 2010) ("Plaintiffs, who were placed on restricted travel and required to attend many court appearances over the course of two years, were 'seized' within the meaning of the Fourth Amendment."); *but cf. Burg v. Gosselin,* 591 F.3d 95, 98 (2d Cir. 2010) (pre-arraignment summons insufficient to constitute Fourth Amendment "seizure").

### D.  42 U.S.C. § 1983 and Municipal Liability

Section 1983 provides a remedy for individuals who have been deprived of their constitutional rights by one or more government employees or government entities.  In order to maintain an action pursuant to Section 1983, a plaintiff must allege two elements: (i) "[t]he conduct at issue must have been committed by a person acting under color of state law"; and (ii) the conduct "must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A municipality can be found liable under Section 1983 only where the municipality causes the constitutional violation at issue.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.").  "To hold a city liable under [Section] 1983 for the unconstitutional actions of its employees, a

plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York,* 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)); *see also Robischung-Walsh v. Nassau Cnty. Police Dep't*, 699 F. Supp. 2d 563, 566 (E.D.N.Y. 2010) (in order to establish liability of a municipality premised on deliberate indifference to constitutional rights, a plaintiff must allege facts that if true would prove that "municipal policymakers made a 'deliberate choice . . . from among various alternatives'") (quoting *City of Canton v. Harris,* 489 U.S. 378, 389 (1989)).  If an employee's actions are not found so deficient as to render them potentially liable for the alleged violations, a municipal liability claim "necessarily fails." *Jovanovic v. City of New York,* 486 F. App'x 149, 153 (2d Cir. 2012).

### E.  Intentional Infliction of Emotional Distress

To establish a cause of action for intentional infliction of emotional distress ("IIED"), a plaintiff must plead: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir. 1999).  "For conduct to meet the standard of 'extreme and outrageous,' 'it must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society.'" *Callahan v. City of New York*, 90 F. Supp. 3d 60, 76 (E.D.N.Y. 2015) (quoting *Shapiro v. Kronfeld,* No. 00-CV-6286, 2004 WL 2698889, at *25 (S.D.N.Y. Nov. 24, 2004)). Whether the conduct is "outrageous" is a matter of law to be decided by the court. *Stuto*, 164 F.3d at 827.  The bar is extremely high, and "[t]his highly disfavored cause of action is almost

never successful." *McGown v. City of New York,* No. 09-CV-8646, 2010 WL 3911458, at *5 (S.D.N.Y. Sept. 9, 2010).

Under New York law, an intentional infliction of emotional distress claim may only be invoked as a last resort "to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (quotation omitted); *see also Moore v. City of New York*, 219 F. Supp. 2d 335, 339-40 (E.D.N.Y. 2002) (granting defendants summary judgment and dismissing plaintiff's claim of IIED as being encompassed by plaintiff's claims for assault, battery, and malicious prosecution). Courts in this district have noted that an IIED claim "is a gap-filling cause of action meant to address those few areas of outrageous anti-social behavior not addressed under any other cause of action." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 415 (E.D.N.Y. 2011).

### F. Substantive Due Process

A Substantive Due Process claim under the Fourteenth Amendment requires demonstrating that the "governmental conduct . . . 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)). The Court of Appeals for the Second Circuit has observed that "'malicious and sadistic' abuses of power by government officials, intended to 'oppress or to cause injury' and designed for no legitimate government purpose," constitutes conscience-shocking behavior. *Id.* at 94 (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001)).

"[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." *Id.*; *see also Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000) ("'[W]here another provision of the Constitution provides an explicit textual source of

17

constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of substantive due process.'") (quoting *Conn v. Gabbert*, 526 U.S. 286, 293 (1999)).

## IV.  Application of Law to Facts

### A.  Claims Against New York City Police Department

Summary judgment is granted on all claims against the New York City Police Department because it is a "non-suable agency of the City of New York." *Antonetti v. The City of New York,* No. 15-CV-6719, 2015 WL 8071004, at *3 (E.D.N.Y. Dec. 4, 2015); *see also Jenkins v. City of New York,* 478 F.3d 76, 93 n. 19 (2d Cir. 2007) (affirming district court's finding that the NYPD is a non-suable agency of the City of New York); Hr'g Tr., Aug. 17, 2016.

### B.  False Arrest

At the time plaintiff was arrested, the police had evidence that she had made violent threats against Rose Flynn and Rose Flynn's children from New York, violating the Pennsylvania Order of Protection.  Garman Decl. at Ex. I (Criminal Complaint); Adams Decl. at ¶¶ 4-11, 13.  This evidence alone was sufficient to constitute probable cause to arrest plaintiff. Because probable cause for any offense acts as a complete defense, *see Ackerson*, 702 F.3d at 20, summary judgment is granted on plaintiff's false arrest claim.  *See* Hr'g Tr., Aug. 17, 2016.

### C.  Malicious Prosecution for Resisting Arrest

Defendants move for summary judgment on plaintiff's malicious prosecution claim with respect to the resisting arrest charge on the ground that plaintiff did not suffer a unique deprivation of liberty separate from the deprivation suffered as a result of the other charges. Plaintiff has conceded that she was lawfully prosecuted for the other charges.

Defendants' contention that plaintiff needed to suffer a unique deprivation of liberty resulting solely from the resisting arrest charge is not correct. *See Perez v. Duran*, 962 F. Supp. 2d 533, 542 (S.D.N.Y. 2013) ("there is no case that supports the proposition that simply because the plaintiff was also required to appear in court on an unrelated matter the appearance that was required for the felony charge relevant to this case is not a seizure within the meaning of the Fourth Amendment").

Plaintiff, however, cannot show any unique damages resulting from the resisting arrest charge. Absent the resisting arrest charge, she still would have been detained on the other charges, and still would have had to return to court five times. Plaintiff has no damages for malicious prosecution that can be attributed to the resisting arrest charge. Summary judgment is granted on the charge of malicious prosecution for resisting arrest.

### D. Excessive Force

Defendants move for summary judgment on plaintiff's claim for excessive force solely with respect to the liability of the City of New York. *See* Hr'g Tr., Aug. 17, 2016. Summary judgment is granted because plaintiff has not shown any custom or policy of the city.

Plaintiff's excessive force claim is asserted through Section 1983. *See* Hr'g Tr., Aug. 17, 2016. In order for the city to be liable on such a claim, plaintiff must show an official custom or policy that caused the denial of the constitutional right. *Wray*, 490 F.3d at 195. Plaintiff's argument is that an inference of a policy can be drawn from three prior district court cases. *See* Pl.'s Opp'n Mem. at 28 (citing *Colon v. City of New York*, Nos. 09-CV-008 and 09-CV-009, 2009 WL 4263362 (E.D.N.Y. Nov. 25, 2009), *McMillan v. City of New York*, No. 04-CV-3990 (E.D.N.Y. dismissed Aug. 21, 2006), and *Richardson v. City of New York*, No. 02-CV-3651 (E.D.N.Y. dismissed Oct. 25, 2006)). She supports this conclusion with a citation to The Mollen Commission's 1993 report and the statement that "police perjury and falsification of official

records has been concluded to be the most common form of police corruption." *Id.* at 29. There are two problems with plaintiff's argument.

First, her reliance on these three prior cases is insufficient to satisfy her burden on summary judgment of making an evidentiary showing of a policy or custom. *See McCants v. City of New York*, No. 11-CV-3511, 2014 WL 5475386, at *4 (E.D.N.Y. Oct. 29, 2014) ("Though Plaintiff points to other lawsuits on related issues, the 'citation to various lawsuits . . . is not probative of the existence of an underlying policy that could be relevant here.'") (footnote omitted) (quoting *Jean-Laurent v. Wilkerson,* 461 F. App'x 18, 22-23 (2d Cir. 2012)); *Morris v. City of New York*, No. 12-CV-3959, 2013 WL 5781672, at *11 (E.D.N.Y. Oct. 28, 2013), *aff'd sub nom. Morris v. Silvestre*, 604 F. App'x 22 (2d Cir. 2015) ("The fact that two of the defendants as well as a non-defendant supervising officer have had civil suits brought against them in the past that resulted in settlements is not even evidence of wrongdoing, let alone that the City has a custom or policy that fosters or results in wrongdoing."); *Guity v. Uniondale Union Free Sch. Dist.*, No. 12-CV-1482, 2014 WL 1330636, at *25 (E.D.N.Y. Mar. 31, 2014) ("Plaintiff cannot establish *Monell* liability simply by reliance on allegations of discrimination or harassment made by other employees in administrative complaints or lawsuits."); *see also Cruz v. City of New York*, No. 15-CV-2265, 2016 WL 234853, at *6 (S.D.N.Y. Jan. 19, 2016) (reliance on citations to prior cases was insufficient to satisfy pleading burden at motion to dismiss stage).

Second, even if plaintiff could satisfy her summary judgment burden by citing to prior cases, these three citations fall well short of sufficient proof. In *Colon*, the court did not find there was a policy or custom, but that, on a motion to dismiss, plaintiff had sufficiently pled that such a policy or custom existed. Other judges have rebuffed plaintiffs' attempts to rely on the

language in *Colon* to survive a summary judgment motion.  *See, e.g.*, *Simms v. The City of New York*, No. 10-CV-3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011), *aff'd sub nom. Simms v. City of New York*, 480 F. App'x 627 (2d Cir. 2012); *Armatas v. Maroulleti*, No. 08-CV-310, 2010 WL 4340437, at *10 (E.D.N.Y. Oct. 19, 2010), *report and recommendation adopted in part*, No. 08-CV-310, 2010 WL 4340334 (E.D.N.Y. Oct. 22, 2010), *aff'd in part*, 484 F. App'x 576 (2d Cir. 2012).

In *McMillan*, neither the judge nor a jury ever made any findings about plaintiff's allegations; the case was settled without any substantive decisions having been rendered.  *See McMillan v. City of New York*, No. 04-CV-3990 (E.D.N.Y. Aug. 21, 2006) (Stip. & Order of Dismissal, ECF No. 32).  Similarly, in *Richardson*, the judge never addressed the *Monell* claims.  Although he denied defendant's motion for summary judgment, because the claims against the City of New York had been bifurcated, they were not addressed before the case was settled.  *Richardson v. City of New York*, No. 02-CV-3651, 2006 WL 2792768, at *1 n. 1 (E.D.N.Y. Sept. 27, 2006).  These cases show that other individuals filed complaints against the police; no findings of fact were made which would lend evidentiary support to plaintiff's present argument.

Plaintiff fails to submit any contemporaneous evidence supporting her argument that there is a policy or custom in the police department that caused the treatment about which she is complaining.  Absent such a showing, her *Monell* constitutional claims based on excessive force cannot survive summary judgment.

### E.  Intentional Infliction of Emotional Distress

Plaintiff contends that the behavior she was subjected to is sufficient to shock the conscience and goes beyond what is covered through other torts.  *See* Hr'g Tr., Aug. 17, 2016.  Because plaintiff contends that other traditional torts will not address her claims, the IIED claim can proceed.

Summary judgment on this claim is denied.  *See id.*

**F.  Substantive Due Process**

Plaintiff argues that during her arrest and detention the police showed a deliberate indifference to her medical needs and circumstances that shock the conscience:

> she was subjected to unusable toilets, poor sanitation, infestation, inadequate water and nutrition, was forced to go to the bathroom with the door open, humiliated, intentionally denied and/or delayed her repeated requests for medical attention, driven around in fear for her life, not permitted to make a phone call, was harassed, yelled at, and berated.

Pl.'s Opp'n Mem. at 24-25.  She introduced evidence at the summary judgment hearing concerning a police officer smoking in the patrol car in which she was held.  *See* Hr'g Tr., Aug. 17, 2016.  The only evidence plaintiff offers in support of this argument is her own deposition testimony.  *See id.*  Defendants contend that there are no allegations in the complaint regarding a violation of substantive due process with respect to deliberate indifference to medical needs, and no facts in the record concerning plaintiff's complaints.  *See id.*

The complaint is deemed amended to include a claim for a violation of substantive due process on the basis of deliberate indifference to medical needs and shocking conditions in the precinct house lock-up.  The parties shall engage in further discovery with respect to this issue and file dismissal briefing returnable at the *in limine* hearing.  Summary judgment is denied but the motion for it may be renewed.

## V. Conclusion

Summary judgment is granted with respect to all claims against the New York City Police Department. It is dismissed from the case.

Summary judgment is granted on the claims of false arrest for resisting arrest, malicious prosecution for the resisting arrest charge against Officer Cheng, and excessive force against the City of New York.

The following claims will proceed to trial: excessive force by the individual officer defendants; state assault and battery claims by the individual officer defendants and the City of New York through a *respondeat superior* theory; intentional infliction of emotional distress by the individual officer defendants and the City of New York through a *respondeat superior* theory; failure to intervene by the individual officer defendants; and substantive due process for deliberate indifference to medical needs and a lock-up that shocks the conscience by the individual officer defendants and the City of New York.

All other claims are deemed withdrawn or dismissed.

Trial shall commence on December 12, 2016, in Courtroom 10 B South. A jury shall be selected that morning by the magistrate judge, at a time to be determined by the magistrate. The parties shall be available beginning at 9 a.m.

No later than December 5, 2016, the parties shall exchange and file with the court: (1) pre-trial briefs; (2) lists of pre-marked exhibits proposed for use at the trial, together with copies of the exhibits, and any stipulations regarding admissibility and authenticity; (3) lists of proposed witnesses together with brief summaries of their proposed testimony; and (4) stipulations with respect to undisputed facts.

Motions *in limine* and briefing on plaintiff's substantive due process claims shall be filed by November 29, 2016. A hearing on motions *in limine* and the substantive due process claims shall be held on December 5, 2016, at 10:30 a.m. in Courtroom 10 B South. Plaintiff and individual defendants shall be present.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: August 24, 2016
Brooklyn, New York